[Crim. No. 1086.    Fourth Dist.    Sept. 21, 1956.]

THE PEOPLE, Respondent, v. ROBERT JAMES STEWART, Appellant.

J. Perry Langford, under appointment by the District Court of Appeal, and Edgar G. Langford for Appellant.

Edmund G. Brown, Attorney General, and Robert S. Rose, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant was charged in an information with having furnished narcotics to a minor in violation of section 11714 of the Health and Safety Code, a felony, in that on or about the 22d day of January, 1956, in said county of San Diego, he did "wilfully, unlawfully and feloniously furnish or administer and give to Nancy Cook, who was then and there a minor of the age of 17 years, a narcotic." Trial was had by the court without a jury and defendant was found guilty of the offense charged in the information. His motion for a new trial and his application for probation were denied and he was sentenced to the state prison for the time prescribed

by law.  He appeals from the judgment and from the order denying his motion for a new trial.  His sole contention is that the trial court erred in admitting into evidence certain exhibits on the ground that they were obtained by unlawful search and seizure.

A summary of the evidence, viewed in the light most favorable to the People (*People* v. *Spreckels*, 125 Cal.App.2d 507, 509 [270 P.2d 513]), is as follows: On January 22, 1956, at about 6 p. m., Nancy Cook, aged 17, met the defendant at a hamburger stand in San Diego.  She then went with the defendant to his residence at 2887 Boston Avenue, arriving there at about 7 p. m.  En route, Nancy and the defendant discussed narcotics and Nancy informed the defendant she would like some heroin.  After listening to some records in defendant's residence, they went into the bathroom where the defendant had a glass of water, a paper containing a brownish-white powder, a lighter, an eyedropper, a needle and a silver spoon.  He cut the brownish-white powder with a knife and placed the substance on a silver spoon, then used cotton as a means of adding water to the substance in the spoon, heated the spoon with the lighter, drew liquid from it into the eyedropper and attached the needle to the dropper.  He then took a belt from the doorknob on the bathroom door and placed it around his arm, inserting the needle into his arm.  He then put the belt around Nancy Cook's right arm and inserted the needle in her arm three times, after which he placed the belt around her left arm and inserted the needle in it four times, injecting fluid into her arms.  Fifteen minutes after these injections Nancy felt slightly nauseous and in 45 minutes she felt drowsy.  She and the defendant again listened to some records and waited for another girl (Chris McCracken) to arrive.  Chris then returned and the two girls went out to get something to eat, after which Nancy returned to her home.

On January 22, 1956, Loel L. Boggs, who had been taken into custody by Sergeant Gibbs of the San Diego Police Department and was in the custody of H. H. James, a United States probation officer, requested Gibbs to obtain his (Boggs') clothing at 2887 Boston Avenue in San Diego.  At the San Diego jail Boggs also asked Officer James to obtain for him a pair of blue suede shoes and some clothing from the address on Boston Avenue.  Officer James conveyed this request to Sergeant Gibbs and on January 23, 1956, at about 4 p. m., he went to 2887 Boston Avenue to pick up the clothing as re-

quested. Upon arriving there, Sergeant Gibbs identified himself to the landlady, who showed him Officer James' card and stated that she had been expecting him. She then unlocked the door to the house and admitted the sergeant. The inside of the house was very dark, the overhead light contained "three small bulbs of the Christmas tree variety, red, blue and green, that shed no light at all." The sergeant turned on the kitchen light and observed a cigarette butt (People's Exhibit 4) lying on a shelf above a built-in desk. The cigarette contained a greenish material that appeared to be marijuana. The sergeant then went to the cupboard, obtained a light bulb and at that time "observed an eyedropper with a needle attached setting needle-downward in a 'gill' or whiskey shot glass." The sergeant then returned to the living room and placed a light bulb in a reading lamp. He obtained the clothing which he came for and then conducted a further search of the premises. He found a number of brown paper rolled "sticks" and two sandwich bags of vegetable matter. (People's Exhibits 2, 3 and 5.) It was stipulated at the trial that Exhibits 2, 3, 4 and 5 contained marijuana. Wayne A. Burgess, an expert chemist, testified that the eyedropper, needle and spoon (People's Exhibit 1) all contained heroin. As Sergeant Gibbs was preparing to leave the premises, the defendant, Nancy Cook and Chris McCracken entered and the sergeant "bid them welcome and asked Stewart if he minded if we looked around and he said 'No, go ahead.' " The defendant and the two girls were taken to the city jail and later that evening the sergeant and two other police officers returned to the defendant's home and were again admitted by the landlady. They retrieved the eyedropper, needle and spoon from a table in the living room where Sergeant Gibbs had left them when he took the defendant and the girls to jail.

At the city jail Police Officer Wilson of the narcotic detail examined Nancy Cook's arms. He observed three needle puncture marks in the elbow fold of her left arm and two in the elbow fold of her right arm. He testified that in his opinion the eyedropper, needle and spoon were "a complete outfit that regular hyps would use and all that is on them it appears to have been used. However, in some instances cotton is usually in the spoon."

Dr. Harry Depew was qualified as an expert physician and testified that if a person received an injection under the circumstances testified to by Nancy Cook and exhibited the

symptoms related by her, it would be his opinion that such a person had received an injection of a narcotic.

Defendant contends that Exhibits 1, 2, 3 and 5 were obtained by unreasonable and unlawful search and seizure. However, he concedes that the police officers acted lawfully up to and including the time when they found People's Exhibit 4, the "roach" or marijuana cigarette butt. He further concedes that after finding the "roach," the officers had probable cause to arrest Stewart and further concedes that the officers had consent to enter the premises for a limited purpose of obtaining Boggs' clothing. He argues that these facts could not justify the two searches thereafter made and that the admission into evidence of fruits of these searches and seizures was improper under the law enunciated in *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905], and subsequent cases. We are not in accord with this argument.

█ Officer Gibbs entered the premises at 2887 Boston Avenue with the consent and at the request of Loel E. Boggs, who resided with the defendant. The officer turned on the lights and first observed the marijuana cigarette butt and immediately thereafter observed the eyedropper, needle and spoon, all of which contained heroin. The defendant then entered and told the officer to "go ahead and look around." The evidence shows that the search was made with the defendant's consent and therefore was not unreasonable. (*People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852].) The officer had reasonable cause to make the arrest. (*People* v. *Brite*, 9 Cal.2d 666, 687 [72 P.2d 122].) Furthermore, it is conceded by appellant that the arrest was lawful. █ It is immaterial that the seizure of the paraphernalia used in the commission of the crime may have preceded rather than followed the arrest. (*People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855].) █ As is said in *People* v. *Winston*, 46 Cal.2d 151, 162 [293 P.2d 40]:

" 'It is well settled that a search without a warrant is valid where it is incident to a lawful arrest, if it is reasonable and made in good faith; and that a seizure, during such a search, of evidence related to the crime is permissible . . .' " (Citations.)

█ The eyedropper, needle and spoon containing heroin were related to the crime charged. Sergeant Gibbs could have lawfully taken these articles with him when he took the defendant to the city jail and the fact that he went back to the defendant's residence, where he was again admitted by

the landlady, and retrieved them did not in our opinion constitute an unreasonable and unlawful search and seizure.

The judgment and order are affirmed.

Griffin, Acting P. J., and Burch, J. pro tem.,* concurred.

A petition for a rehearing was denied October 2, 1956, and appellant's petition for a hearing by the Supreme Court was denied October 17, 1956.

*Assigned by Chairman of Judicial Council.